1-3-4-1-5-7 Daily Services LLC v. Tracy Valentino et al. Arguments not to exceed 15 minutes per side. Mr. Price for appellant. Thank you, Your Honor. May it please the court, at the outset I would like to reserve three minutes for rebuttal. This case arises from a series of nine judgments and liens totaling over $140 million that were filed against Daily Services between November of 2009 and December of 2011 as a result of the appellee's actions. The trial court granted appellee's motion for judgment on the pleadings based on the factual allegations of the complaint must be accepted as true and construed in the light most favorable to Daily Services, despite the alternative version that was presented in appellee's brief where they talked about mistakes, missteps, and clerical errors. Specifically, the trial court held that because of uncertainty regarding the application of the parent doctrine arising from this circuit's case law, Daily Services failed to show and indeed could not show that appellee's actions violated clearly established constitutional rights. Although parent was decided over 30 years ago, the trial court committed reversible error as recognized by the only other court to adopt that approach. In San Geronimo, a panel of the First Circuit Court of Appeals also held that a lack of clarity regarding that circuit's application of parent precluded the plaintiff from showing that reasonable defendants would know that their conduct violated clearly established constitutional rights. Now the First Circuit subsequently vacated and withdrew that opinion and issued a new in-bank decision, San Geronimo 2. In a concurrence on bank decision, one of the members of the original panel actually explained that uncertainty about the applicability of parent is irrelevant to the qualified immunity analysis. What would be the proper qualified immunity analysis here in your view? I think it is just the standard qualified immunity analysis, which begins with whether or not there was a violation of a constitutional right. Second of all, was that right clearly established such that reasonable officials in the appellee's position would know that their actions would violate that clearly established right? We should get right to the question of was there a violation of a constitutional right here in your view? Yes. I think you need to decide whether parent applies. As far as qualified immunity, yes. You begin with was there a violation of a procedural due process? I believe there was. Then second, you would analyze the reasonableness of appellee's conduct in light of how clearly established that was. If parent applies, we would affirm on other grounds the district court judgment. You don't want us to apply parent? Correct. Tell us why. Why parent doesn't apply. I can move to that. In order for parent to apply under Zinnerman and its progeny, the filing of the nine judgments and liens against daily services property would have to satisfy the following tests. First, the deprivations were random and unpredictable. Second, the pre-deprivation due process was impractical or impossible. The actions of the state officials, appellees, were not authorized. Although appellee's actions need to satisfy all three of these requirements, they fail to satisfy any of them. Indeed, appellees admit that their services would be accorded due process before any deprivation occurred. Are you challenging the established state procedures themselves? Not the statutes or the regulations adopted pursuant to those statutes. Those are designed precisely to ensure that due process is accorded. Here, appellees argue that the fact that they disregarded those regulations and statutes is their very salvation. They claim that since they violated the procedures designed by state law to ensure that daily service received due process, their actions were both random and unauthorized. Thus, they maintain that if the state adopts procedures to provide due process and the state officials then intentionally disregard those procedures, those actions are random and unpredictable. In attempting to ascertain predictability, do we look at the actions of the state officials, the individual defendants here, or do we look at this from the perspective of the state of Ohio and whether it could determine predictability? I think courts in this circuit have adopted both approaches. I know in Murtick, they talked about the fact that the particular municipal employees, how could it be unpredictable to them? They're the ones that did it. I don't think that is the proper analysis. I think when you dig into PARROT and look at what it's talking about, it does talk about random and unpredictable actions by state employees such that the state couldn't do anything about it. I think what's the Supreme Court talking about when it's talking about the state? I think it's talking about responsible state officials, senior state officials, the state officials that we would expect to provide the exact due process, ensure the due process is protected, that would ensure that low level employees are following the dictates of the Constitution. Those senior state officials in PARROT, from their perspective, it was unpredictable that a particular prison guard might throw out somebody's property. Why isn't it unpredictable here in the same way? Precisely because these are the senior governmental officials. When this court decided Murtick, it said you need to look at all of the circumstances surrounding the deprivation. I think those circumstances involve who the appellees are, what their level are. Are they prison guards like we have in PARROT and so many of the other cases cited, or are they more like the hearing officers? Where this court has said PARROT doesn't apply. When the hearing officer refused to follow state law or state procedures regarding the conduct of the hearing, the court says they're not entitled to PARROT's protection. Reached the same conclusion in Wedgwood and Warren, as well as Murtick, where they were dealing with senior state officials who were in a position both to affect the deprivation and also had the responsibility to ensure that due process protections were provided. Do we have the same sort of question when we get to the words random and unauthorized? My sense of the record is that these individual defendants were not authorized to file these various liens and judgments absent the completion of the notice and opportunity to be heard, the assessment process and opportunity for there to be an appeal. At that point, presumably they would be authorized to file liens and judgments, but they filed them at different points along the way prematurely. I wouldn't say just prematurely. I do think they were authorized. We're talking about senior level officials who not only had the authority to do it, to direct that they be filed, but that's how it came to be filed, by their direction. It again is just like the board in Wedgwood, where the state law said before you can pass this zoning regulation, you have to provide notice in a hearing. The board didn't. I guess your view is the authorization comes from the fact that a senior official apparently gave the go ahead as opposed to there being authority in the regulations, rules, statute for these liens and judgments to be filed. Really, that's consistent with a lot of the decisions this court has cited, where it has specifically noted. I think Harris is one, but where this court has specifically noted that the state officials didn't follow state law. They ignored it. In effect, they were unauthorized to take the action they did, but they did so anyway. Again, I think if you read through the cases closely, you see that the distinction involves a number of things. One, of course, is the position of the person who's acting. You've been calling these people senior officials. Why are they senior officials? As noted in the complaint, we are dealing with the chief financial officer, the chief customer service officer, I believe is the exact title, as well as an assistant general counsel are the three named. Then there are also John Doe defendants because, again, this case is at the pleading stage. We haven't had any discovery to discover who, if anyone else, may have participated in this. Individuals who weren't named were the file clerk, the Josetta Fry, the person who may have done the actual administrative filing that was following the direction. Again, the people that are named as defendants in this case are more analogous to the hearing officers in the context of the prison cases, where the court did find Parrott, did not apply the hearing officers, as opposed to the prison guards, where, of course, following Parrott, the court has announced a number of decisions over the years that said, prison guards, if they take these actions, whether they do so intentionally or by negligence, they're subject to the Parrott rule. I interrupted you. You were going to say something that was another distinction beyond there being senior officials. Well, I think senior officials also go back to the idea of random and unauthorized. Again, and that's the San Geronimo case, where you had a single act where the state officials, and they were senior state officials, decided to issue an emergency order. Supreme Court of Puerto Rico said, you shouldn't have issued it, it wasn't an emergency, it was a mistake. The court ultimately decided that that did not give rise to 1983 liability, a single action, a single mistake. Here, you have officials who not just have one mistake, but then they proceed to repeat it again and again and again. Oftentimes, repeating it literally within days of getting an order from the Court of Common Pleas, vacating one judgment, and then they file another one, which daily services had to go. Just one question, thanks. So essentially, your argument is that daily services was entitled to some sort of pre-deprivation due process, and you're not making any claim as to inadequacy of Ohio's post-deprivation procedures. That's, in your view, not an issue? Well, that only comes into play if the court were to find that this wasn't random and unauthorized. Then the issue becomes whether the post-deprivation remedies are adequate. But that's not something that's in your complaint, is it? No, it is not. Although, I will say the complaint describes a number of attempts to get judgments vacated that didn't provide a remedy. Thank you, Your Honors. May it please the Court, my name is Jim King. I'm special counsel for the three individual defendants in this case, Tracy Valentino, Tina Kielmeyer, and Tom Seiko, all of whom are employees of the Ohio Bureau of Workers' Compensation. One thing that we agree on is that the case here centers on the proper application of PERIT to the facts as alleged in daily services complaint. In particular, to what extent does daily services have to show, plead and show, the inadequacy of available state law remedies? As we argued below and as we argued here, they can't make that showing because not only did they have adequate state law, daily services have adequate state law remedies, they took full advantage of those state law remedies and was able to address the violations of Ohio law that are described in the complaint. Was it enough for them to have post-deprivation remedies? Under PERIT, we believe, Your Honor, yes, that is enough. As long as they have adequate post-deprivation remedies, which we believe that they do. You say under PERIT, does that assume that PERIT applies? That assumes that PERIT applies. What if the, and I don't know how to pronounce it, the Zinerman? Zinerman. Zinerman, thank you. Why isn't this a Zinerman? Well, I think the San Geronimo case, which is an en banc opinion from the First Circuit, provides a very, I think, helpful explanation on situations in which Zinerman would apply. And in there, Zinerman, according to the First Circuit, applies when you have authorized conduct, but the conduct is subject to the unfettered discretion of a state official. It's really standardless. So in that situation, you must provide some type of procedural due process. There's some type of pre-deprivation process in order to satisfy the requirements of procedural due process. Here we don't have instances of unfettered discretion. We have specific requirements of Ohio law with regard to assessments and notices of assessment and judgments with regard to delinquent workers' compensation premiums that are very clear and they weren't followed. I mean, the complaint in this case concerns really five sets of judgments and liens, four of which relate to the allegation that daily services is the successor in interest to another company, I-Force, which failed to pay roughly $3.5 million in workers' compensation premiums. With regard to those assessments, judgments, and liens, the allegations are, and they were able to establish in several of those instances, that the Bureau of Workers' Compensation did not comply with the established state procedure. You know, does it make any difference that this failure to comply happened again and again and again, three, four, five times? I think there were nine judgments and liens. They're about filed. You'd think at some point that should be held against the state or the defendants. Well, there is a keystone cop quality to what the Bureau did. I admit that. They did take action. They did challenge what the state did, and they prevailed in each instance. And so I don't think it makes a difference because they had the adequate post-deprivation remedies and they took full advantage of them. And with regard to- What is to stop the state from continuing, these officials from continuing to do this, and saying each time the plaintiffs should rely on their post-deprivation remedies? Hypothetically, I guess they could seek some type of order, some type of injunctive order. They could try to seek some more formal adjudication of the basis for, which is being adjudicated right now, as laid out in the briefs, the basis for the state's claim against daily services as successor in liability. There are other steps conceivably that could be taken to stop this, to prevent this action or these actions from occurring or recurring in the future. And the point, the claim that is made, I think it's important also to address, that these were senior state officials, and so there should be an exception here. I think it is one point that I believe the magistrate judge could rule correctly on, is that there's no case on the Sixth Circuit that says that. But moreover, I know that the chief financial officer of Bureau sounds like a senior position, but there is nothing in the pleadings indicating that any of these three are, quote-unquote, senior officials that had the authority to take the action that he's claiming that they took. It's not set out in the complaint. We're dealing with an assistant general counsel, not the general counsel of the Bureau. We're dealing with a chief of customer service, wherever she fits within the organization, which are sound clear. But we're not dealing with the administrator. Maybe if we're dealing with the administrator, maybe we would have something to talk about. But the claim that these are senior officials that had the authority, that's not pleaded. That's not laid out anywhere in the complaint. In fact, there are a dearth of allegations in the complaint pertaining to specific actions that any of these three took. Indeed, most of the complaints in the complaint center on robo-signing of precipice that were used to obtain judgments and liens. Robo-sign facsimile signatures, it was almost like it was on automatic pilot, which is the antithesis of discretionary decision-making that cases like Zinerman would apply to. If I could interrupt one second. So it seems to me that your argument is that the district court should have affirmed here, but it got to that affirmance using the wrong pathway, maybe, that the district court talked about the uncertainty of whether PARROT applies. And counsel for the plaintiff says the district court conflated these two concepts, PARROT as it deals with the random and unauthorized acts and the traditional qualified immunity analysis. And your argument, I take it, is that PARROT definitely applies, and there's no uncertainty about that. So the district court maybe used the wrong analysis in getting to its disposition. I would respectfully suggest the qualified immunity analysis involves two essential steps. One is whether the plaintiff has stated a constitutional violation, and the second element is whether the right is clearly established. Magistrate Judge Devers below focused on that second element, whether the right was clearly established, looking at some case law that at least apparently, according to her, shows some inconsistency in terms of the application of PARROT. We believe the proper analysis first is that PARROT applies, and the plaintiff's Daily Services has not established that there is a violation of procedure due process, precisely because they had available state law remedies. In terms of the random and unauthorized nature of the action, I know this is a federal appendix case, but it is a case, Judge Moore and Judge Cole, in which both of you were on, and I'll just quote, it's Garrison v. Walters, and it says, if an official fails to follow state procedures or conform his conduct to state law, the plaintiff's injury is a result of a random and unauthorized act, which the state was unable to foresee and thus prevent. I would respectfully submit that this case falls squarely within there, that they're not challenging, Daily Services is not challenging the established state procedures. Rather, they're claiming that the defendants failed to follow, conform their conduct with those established procedures, and as such, that conduct would constitute random and unauthorized conduct for purposes of PARROT, and PARROT should apply. Is there an adequate state court monetary remedy also? Well, I've had a lot of time to think about it. Mr. Price and his clients have given me a lot of opportunities to think about this case. I think there probably could be. I don't know whether they have that currently, but there's abuse of process claims that possibly could be alleged. There's a waiver of sovereign immunity under the state of Ohio for traditional tort claims, and that's a tort claim. I query whether they could still maintain that claim, because there has been other litigation which has proceeded involving the Bureau and Daily Services, and the Bureau has prevailed, at least on the most recent decision that went up to the Ohio's 10th District Court of Appeals, in which Daily Services brought claims against the Bureau. Whether they could still bring those claims today in light of principles of claim preclusion, I don't know. I haven't thought about that, but there is an analog in state law that they could at least pursue or look at. You know, I guess as I try to think about this case, I wonder if your argument also comes down to the proposition that we should shield your clients from liability because they believe their conduct was so uncontrollable that we shouldn't make the state responsible. Is that a reasonable sort of extension of the argument? Your Honor, I don't know of any case law that has that kind of application to parrot if there are adequate state law remedies to address the alleged procedural due process violations. You know, it shouldn't have happened. I would agree with that. It shouldn't have happened. It does look bad in the complaint, but I would go back. Maybe it's one time too much, but I know there are eight or nine different judgments and liens, really four sets of them. But again, not to flog a dead horse, they did challenge those actions and they obtained relief. But then the actions happened again, right? They happened again. They happened concurrently. I mean, it looked like a flurry of activity that was coming out of the Bureau, whether that was because of the robo-signing and it was on autopilot, I don't know. But it did happen. It happened several times. It happened in part because of a mistake by the Bureau in terms of what they thought had already been established. As laid out in the complaint, there was an administrative adjudication from October of 2009 within the Bureau that determined that the experience of I-Force would transfer to daily services for purposes of determining your workers' compensation rating. The Bureau believed that that decision also established daily services liability. It turns out that was not the case, that that adjudication did not address that matter and the matter remained pending and is still being adjudicated today administratively. There were errors. I mean, there were errors by the Bureau. There's no question about that. But I think the analysis under Parade is, do you have an adequate state law remedy to address those alleged deprivations? And I believe that they do. One other point I think it's important to make, we don't concede that there has been any, even in light of the mistakes of the Bureau, that there have been any procedural due process violations for purposes of the 14th Amendment. If you look at their complaint, they allege violations of notice in that the Bureau failed to provide notice by certified mail. Not that they failed to provide notice, but they failed to provide notice by certified mail. That is what got the Bureau hung up over and over and over again. Either they mailed it by regular mail or they mailed it to I-Force rather than daily services. I know this is, I think this is beyond the scope, but I think it's important for the court to understand we don't believe, even if this court would reverse the district court, that there has been any procedural due process violation. There was a violation of Ohio law, but whether that's tantamount to a constitutional violation is to be adjudicated in a later day in the event the district court decision is reversed. What about not just notice, but the opportunity to be heard, which is usually a part of due process? The judgments and liens should not, it was an error of Ohio law for the Bureau to obtain, first of all, judgments and liens while an assessment was being protested. One of the liens and judgments was taken in light of an administrative protest that was occurring within the Bureau. That should not have been done. That was a mistake and the 10th District clarified that in a decision in September 2012, which is actually the first decision in Ohio that clarified that. So whether the state officials should have been on notice of that is a question. I think that the availability of those post-deprivation remedies addresses otherwise the pre-deprivation notice that typically procedural due process would require. I would also note that daily services had notice of the overall claim. Now, I'm not saying they had notice, or at least notice by certified mail of each particular judgment and lien, but they knew about the Bureau's position because they protested that position and that was the protest that at least resulted in a partial adjudication in October 2009 before the Bureau. So it was not a surprise what the Bureau's position was, but the specific actions by the state, they didn't conform to Ohio law and they were set aside. I know you've also argued that this matter is moot, but I'm wondering if you're still advancing that argument. You seem to acknowledge that Judge Drain's question that plaintiffs still have a monetary claim, claim for damages. Well, they claim a monetary claim and I think they have avenues, or at least they may have avenues to pursue that in Ohio law. I do believe that it is moot, though. We do still make that argument based on Sixth Circuit precedent that because these issues have already been adjudicated and resolved in their favor, the claims are moot in terms of the 1983 claims. But in particular, then you're saying they can't seek damages in federal court? That's correct, and Parrott holds, Parrott says that simply... In terms of mootness. You're saying even though normally 1983 damage claims are available in federal court, their claims are moot because they have... Their claims are moot because the underlying violation that serves as the basis for their claims have already been resolved. The issues have already been decided in state court, and so therefore any 1983 claim would be moot. And the availability... They were decided in state court in their favor? Yes, the challenges were decided in their favor, correct. Don't they claim that as part of the damages, Daley Services was not able to get credit, their financing was impaired, things of that nature. Those matters have not been resolved. They do allege that, that is correct. But I believe the law under 1983, under Parrott, and under other cases in the Sixth Circuit, is that the availability of damages under 1983 is not a reason to keep a 1983 claim alive. Is there a case you would cite us for that? Parrott's one. I know that Parrott is one. Thank you. Thank you. Thank you, Your Honor. Let me first of all address the Garrison case in conjunction with Judge Moore's question about what's to stop them from doing it again and again. And that's the problem with the position that's being advanced here. Yes, in Garrison, the court said, these prison guards who happened to have lost this guy's photo album or destroyed it, that doesn't give rise. And it's interesting the phrase used by the court. It doesn't say it's not a due process violation. The court says it's not actionable under 1983. It's not actionable. But it doesn't say that's not a due process violation. But again, Garrison was a single incident involving prison guards. Here, the problem is if you accept the plaintiff's argument that because there is a procedure in place under Ohio law to provide due process, they can ignore it. They can file another judgment tomorrow. They can file a judgment the week after that. When the next one's vacated, they can file a new one. And they can keep doing it. And our remedy is to go down and get it vacated. That may take six months. That may take nine months. And let me address, again, this notion about there were just some mistakes were made and things happened. There are specific allegations in the complaint. And let's start with the first one, the $54 million judgment that they said, well, they misread, misunderstood the decision. The decision that was made was whether or not Daily Services was a successor to I-4s for purposes of experience. Even if it had decided successor liability, it starts a new process. You issue an assessment. There was no assessment created. It wasn't mailed to the wrong address. According to the complaint, Apelli Valentino specifically directed, hey, go down there and file this judgment for $54 million and this lien for $54 million. And two weeks later, they filed another $22 million lien to get Mr. Mason's attention. There was no pretense that they had followed the procedure. They had not created a notice. They had not created an assessment. And immediately after that judgment was vacated, almost over a year later, ten days later, another judgment is filed again. And another lien is filed again. Literally ten minutes after the $54 million lien was released. Again, it took nine more months for that to get vacated. Can you address briefly the mootness issue? Your opponent says that under Parrott, there's no ability to bring this action. I think if you read the cases they're talking about, it's cases where the relief being sought in the federal court was the same as the state, for example, injunctive relief. Here, it's not moot because the relief that was obtained, the vacating of the judgments, to me, it would be akin to if you had a case with a defendant who had been beaten by the police and he had signed a confession. And the court suppressed the confession because of a violation of his due process rights or an illegal search. And then he brings a 1983 action because of the damages he suffered from either the search or from the abuse by the police. The court would not say, hey, you've already had your relief. If you got the confession suppressed, you got the evidence thrown out, you were acquitted at trial. That would not remedy the 1983 violation. The same is true here. The damages that were suffered were substantial. And in part, one of the reasons they were suffered was because right when daily services would get a decision from the court vacating the judgment, and Mr. King indicated that there's no allegation of due process violations, we attach the court's decisions. Judge Bessie threw out that judgment because of due process violations. Thank you. Thank you, Your Honor. The red light is on. The case will be submitted. We appreciate both sides' arguments.